## CHINA v. CITY OF SUMTER.

CHARGE—NEGLIGENCE—JURY.—When a trial Judge says to the jury, "If the city place obstructions there, not giving any notice, and he sustain damages, it would be an act of negligence and mismanagement, and the city would be liable," he charges on the facts; for what facts make up negligence is for the jury, and such evil is not remedied by his saying to the jury, all questions of fact are exclusively for you.

Before Kʟᴜɢʜ, J., Sumter, March, 1897.　Reversed.

Action by Alfred J. China against city of Sumter.　The Judge charged the jury as follows:

Mr. Foreman and gentlemen of the jury: The plaintiff brings this action against the city of Sumter, claiming damages, because, as he alleges, the city, by its agents and by its negligence and mismanagement, erected a post on one of the public ways of the city, and failing to give due notice of that, that his carriage was driven against that post, without any negligence on his part, and certain parts were broken and certain damages ensued to him.　The action is brought, as you have, I think, learned from the argument of counsel, on an act of the legislature allowing actions of that kind to be brought against a city, and such town or city becomes responsible under circumstances of that kind.　Now, it is a question for you to determine whether or not the evidence makes out a case of negligence or mismanagement on the part of the city authorities; and it is for you to determine whether or not the plaintiff was guilty of such contributory negligence as would prevent his right to recover.　Now, the question for you to determine first of all is, and that you must determine from the evidence, whether there was a public way, as the act says "any street, causeway, bridge, public way;" you are to determine whether there was such public way there; if so, then whether the city was negligent or guilty of mismanagement in planting that obstruction; whether the obstruction was planted in the public way, and whether, if so, the city was guilty of negligence or mismanagement in placing it there; and if you find that that is the case, whether the plaintiff contributed by his negligence to the damages which ensued; and if you find that he did not, then the next question for you to determine would be, if you find that the plaintiff is entitled to damages, how much damages.　Now, I hardly deem it necessary for me to do more than perhaps read the act to you, and probably submit

some suggestions by way of construction of the act, if it is at all necessary to aid you in coming to a conclusion in the case. The act is as follows: "That any person who shall receive bodily injury, or damages in person or property, through a defect in any street, causeway, bridge or public way, or by reason of defect or mismanagement of anything under control of the corporation within the limits of any town or city, may recover in an action against the same, the amount of actual damages sustained by him by reason thereof. If any such defect in a street, causeway or bridge existed before such injury or damage occurred, such damage shall not be recovered by the person so injured if his load exceed the ordinary weight: *Provided*, The said corporation shall not be liable unless said defect was occasioned by its neglect or mismanagement: *Provided, further*, Such person has not in any way brought about any such injury or damage by his or her own negligent act or negligently contributed thereto."

The counsel have argued to you and to the Court certain propositions of law which are involved in this case. I will read the propositions submitted by the counsel for the plaintiff, which I think are sound propositions: First. * * * Fourth. If the jury find that the place where the post was alleged to have been driven down was in a public street of said city, and if the jury find that the same was driven down there, and by the agents and servants of the defendant and by its authority, and if the jury find that the defendant allowed the same to remain there overnight and without any danger signal or other notice to the plaintiff or to the public, and that the same was a defect in said street, and if the jury find that such were acts of negligence or mismanagement on the part of the defendant, and that by reason thereof the plaintiff suffered injury in his property, then the plaintiff would be entitled to recover, unless the jury find that such injury was brought about in any way by the negligent act of the plaintiff or his agent or servants, or unless they negligently contributed

thereto.   I charge you that also.   But you are to consider
the purpose for which Mr. Graham had expressly dedicated
this.   I take it that his written testimony states fully for
what he dedicated it, that of constructing a sidewalk.
Now, of course, as it has been argued to you and argued to
me, I conceive it to be my duty to tell you that there is a
distinction between a sidewalk and a public way for ve-
hicles.   There is a distinction observed in all towns in our
State, and probably in all civilized communities.   A side-
walk is appropriated by the city authorities for one purpose
and a way for vehicles for a different purpose.   No man
has a right to drive his vehicle on a sidewalk under ordin-
ary circumstances.   Now the whole question is what kind
of way it was, and that is for you.   If you conclude that it
was a road that had been used for vehicles and no sidewalk
there, then the plaintiff had a right to drive his vehicle
just as every citizen had done.   The city has a right under
its charter, I presume that the city of Sumter has similar
provisions in its charter as other municipalities, the city
authorities have a right to lay off sidewalks and to mark
out certain limits of the street that are to be used by foot
passengers and to see that vehicles shall not go within
that limit, and any persons who drive within this limit are
wrong-doers, and are liable to such penalties as they may
inflict.   If you should find that this was not regularly used
as a public way for vehicles, but had been marked out as a
pavement or sidewalk for foot passengers, letting due no-
tice be given of that fact, then this plaintiff nor any other
citizen would have a right to drive his vehicle on there,
and if he knew that it was and drove his vehicle on there
and sustained damages, he would contribute to the damage,
he being a wrong-doer, and could not recover.   As I have
said, that is a question entirely for you, whether or not that
was a street, whether or not it was a public way run upon
by vehicles, and whether the city council had by its agents
marked out a sidewalk duly indicated by post and other
matters, and whether that had been done sufficiently long

for the public generally to know it, and whether this plaintiff by his agents actually did know it.    If you find that is the case, then the plaintiff would not have the right to recover.    On the other hand, if you find that was put there without the knowledge or without the notice on the part of the city, and they not having been put there long enough for the public in general to know it, and if it was put there in such a brief period that this plaintiff had no reasonable means of knowing it, then he would have the right to use that portion for the passage of his vehicle.    And if the city place obstructions there, not giving any notice, and he sustained damages, it would be an act of negligence and mismanagement, and the city would be responsible, and would be responsible if damages ensued.    The fact of whether the city was negligent, is a question entirely for you.    Whether or not the city authorities were guilty of mismanagement on placing obstructions there.    Whether or not they gave notice to the citizens.    If you find that they were guilty of negligence in placing that obstruction there, then you find that the plaintiff or his agents were negligent in driving his carriage on there upon the post, and through their negligence or carelessness the damage ensued, then the city must not be held responsible for their negligence in contributing to the damage.    Now there has been a good deal said in argument as to the different phases of the law.    As to the history of the law of public ways in this State, I don't deem it necessary to detain you with that at all.    But I will charge you on one point raised by defendant's counsel.    That if you conclude that it was mere error of judgment in the city authorities, the city authorities would not be responsible for an error of judgment on their part in the exercise of their duties under the charter.    A man must, before he can be acquitted of a charge of that kind, he must exercise sound judgment.    No man can be excusable or any city council, for placing an obstruction in the middle of a public road or way, by claiming that it was an error of judgment.    Every man must exercise sound judgment, or

discretion at least, to insure a reasonable probability that no damage will ensue. * * *

Judgment for plaintiff.    Defendant appeals.

*Mr. T. B. Frazer*, for appellant, cites: *What is negligence question for jury:* 25 S. C., 31; 9 S. C., 64; 2 S. C., 538; 50 S. C., 214. *Judge charged on facts:* Con. 1895, Art. V., sec. 26; 31 S. C., 218; 47 S. C., 513; 15 S. C., 393; 24 S. C., 591; 49 S. C., 488, 550; 50 S. C., 161.

*Messrs. Lee & Moise*, contra, cite: *Dedication of private property:* 7 Rich., 450; 5 Strob. L., 217. *Charge on a fact followed by caution not error:* 48 S. C., 145; 47 S. C., 488. *Charge as a whole correct*: 17 S. C., 136; 18 S. C., 113; 22 S. C., 191, 483; 23 S. C., 199; 24 S. C., 132; 42 S. C., 170; 37 S. C., 335; 47 S. C., 386, 74; 46 S. C., 541, 43; 45 S. C., 146; 50 S. C., 405; 43 S. C., 133.

March 14, 1898.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.    The plaintiff brings this action against the defendant, a municipal corporation, to recover damages for certain injuries done to his property—his carriage and harness—by reason of the neglect or mismanagement of the servants or agents of defendant. It appears that on the 11th of November, 1896, the agents of defendant were engaged in constructing a pavement or sidewalk, dedicated for that purpose by the adjoining proprietor, on a strip of land adjoining one of the public ways of the city of Sumter, and, with a view to protect the sidewalk from being encroached upon by vehicles, a line of posts were planted, one of which, as alleged by plaintiff, was planted in a carriage rut, which had been made by vehicles passing along said public way.   On the day above named, late in the afternoon, the plaintiff's son, accompanied by another gentleman and two ladies, drove the plaintiff's carriage along said public way, out into the country, to attend a wedding.   Returning to the city the next morn-

ing, about an hour before daylight, while it was still quite dark, the carriage collided with the post alleged to have been driven down in the old carriage rut, and was considerably injured.

The main question in the case was, whether the injury complained of was caused by the negligence of the defendant; and upon that question testimony was adduced both *pro* and *con.*, and upon the close of the testimony the Circuit Judge charged the jury as set out in the "Case," a copy of which should be incorporated in the report of this case.   The jury having rendered a verdict in favor of the plaintiff, and judgment having been entered, the defendant appeals upon the several grounds set out in the record, which need not be stated in detail here, as, under the view we take, the main and controlling question presented by the appeal is, whether the Circuit Judge, in his charge, violated the constitutional mandate forbidding him to charge on the facts, sec. 26, art. V., of the present Constitution, which reads as follows: "Judges shall not charge juries in respect to matters of fact, but shall declare the law."   It must be remembered that the former provision upon this subject, in the Constitution of 1868, sec. 26 of art. IV., allowed greater latitude to the judges than is now permitted; for *then* the judge was allowed to "state the testimony," but *now* he is not allowed to do so.   In construing this constitutional provision, as declared in the Constitution of 1868, it was said, in the case of *State* v. *James*, 31 S. C., · at page 235, that, in stating the testimony as then allowed, "the judge must be careful to avoid expressing, or even intimating, any opinion as to the facts, and that if he does so, whether intentionally or unintentionally, a new trial must be granted.   Under our Constitution, the jury are the exclusive judges of the facts, and the true meaning and real object of the section of the Constitution above quoted is, that they must be left to form their own judgment, unbiased by any expressions, or even intimations, of opinion from the Judge."   If this be the proper construction of the

former constitutional provision upon this subject, it must necessarily apply with at least equal, if not greater, force to the present constitutional provision, which is much more restrictive in its terms. But this whole matter has been so fully considered, and the authorities so elaborately collated, in the recent case of *Norris* v. *Clinkscales*, 47 S. C., 488, that it is not necessary to do more than to refer to that case. Looking at the question now presented, in the light of these authorities, we observe, first, that it is well settled that the question of negligence is a mixed question of law and fact; what is the meaning of the term "negligence" being a question of law to be passed upon by the Court, and whether the facts proved in a given case are sufficient to show negligence, as defined by the Judge, being a question of fact exclusively within the province of the jury. *Bridger* v. *Railroad Company*, 25 S. C., at pages 30, 31. For, as is there well said by the late Chief Justice Simpson, "The law, however, does not state what facts proved will show the absence of ordinary care. It could not do so as applicable to every case which arises. The cases involving this question are so different in their facts, so various, so complicated, and arising under so many different circumstances, that it would be utterly impossible to lay down any general principle of law by which every special case could be measured and tested as to the fact of negligence, and which would enable a judge to say to the jury, as matter of law, such and such facts show the absence or presence of ordinary care." Hence, whenever a Circuit Judge undertakes to tell the jury that if a certain fact, or series of facts, have been proved to their satisfaction, then there would be negligence, he passes beyond the boundary line which separates the province of the judge from that of the jury, and invades the province of the jury by expressing to them his opinion upon a material question of fact in the case, to wit: whether such fact or facts are sufficient to show the want of ordinary care, whether there was negligence. When, therefore, the Circuit Judge said to the jury in this case,

unintentionally, no doubt, "If the city place obstructions there, not giving any notice, and he sustained damages, it would be an act of negligence and mismanagement, and the city would be responsible," he invaded the province of the jury, and expressed his opinion as to a material question of fact; and for this reason "a new trial must be granted."

It is contended, however, that this error was obviated by the fact that the Circuit Judge, in several other portions of his charge, told the jury that all the questions of fact were exclusively for them. But this view cannot be accepted; for if, as we have seen, the real object of this constitutional provision was to leave all questions to the jury to be decided according to their own judgment, unbiased by any expression or even intimation of opinion from the Judge, it is manifest that such object would be defeated, if a Circuit Judge should be allowed to express his own opinion upon any material question of fact, and then undertake to wipe out the impression made upon the minds of the jury by telling them that all questions of fact were for them. The impression having been once made, it would be very difficult, if not impossible, thus to obliterate it, and the result would be that the jury would be, more or less, influenced by an opinion coming from so high a source as an intelligent Judge, whose mind had been trained to weigh testimony and determine its force and effect, and thus the very object of the constitutional provision, to preserve the minds of the jury from being in any way influenced by the opinion of the Judge as to a question of fact, would be defeated. This view is fully supported by authority. *State* v. *White*, 15 S. C., 381; *State* v. *Smalls*, 24 S. C., 591; recognized and followed in the recent case of *Norris* v. *Clinkscales*, 47 S. C., at page 524. See also *Hopt* v. *Utah*, 110 U. S. Rep., 582-3.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.