# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Melvin Presley Stukes, Petitioner.

Appellate Case No. 2015-000908

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
The Honorable DeAndrea G. Benjamin, Circuit Court
Judge

---

Opinion No. 27633
Heard January 13, 2016 – Filed May 4, 2016

---

## REVERSED AND REMANDED

---

Appellate Defender Kathrine H. Hudgins, of Columbia, for Petitioner.

Attorney General Alan M. Wilson, Assistant Attorney General Susannah R. Cole, Assistant Attorney General Mary W. Leddon, and Solicitor Daniel E. Johnson, all of Columbia, for Respondent.

---

**JUSTICE HEARN:** Melvin P. Stukes appeals his conviction for criminal sexual conduct (CSC) and first degree burglary, arguing the court of appeals erred in affirming the trial court's jury instruction that Victim's testimony need not be corroborated by additional evidence or testimony pursuant to Section 16-3-657 of the South Carolina Code (2003).[1] We reverse and hold instructing the jury on this statute is an impermissible charge on the facts and therefore unconstitutional. We further overrule our precedent condoning this instruction.

## FACTUAL/PROCEDURAL BACKGROUND

On the evening of May 10, 2004, Victim arrived at her friend Jaqueline Bruton's home and informed her she had been sexually assaulted that evening. Bruton encouraged Victim to seek medical care and brought Victim to the Lexington Medical Center for an exam. At the hospital, Victim underwent a sexual assault examination, which included an interview, the collection of her clothing, and a vaginal swab. Although there was no sign of pelvic or vaginal injury, Victim did display some redness on her face around her cheek and eye, as well as around her neck.

By January 2005, a DNA profile was developed based on a sample obtained from Victim's underwear, but no match was found. Then, in June 2007, the DNA profile was finally matched to an individual—Stukes. The police attempted to locate Victim, but did not discover her whereabouts until early 2010, when a cold case team began investigating the matter. Finally, in May 2010, police arrested Stukes. He denied knowing Victim after being shown a picture of her and stated he had only had sex with two white women, and she was not one of them. However, when confronted with the evidence of her DNA, he admitted he must have had sex with her. He was ultimately charged with CSC and burglary; the case proceeded to trial before a jury.

At trial, Victim testified that on the evening of the incident she was getting ready for work around 9:30 p.m. when she heard a knock at the door. Upon opening the door, a man grabbed her throat and punched her in the face, causing her to stumble and fall over the side of her couch. She believed she blacked out after falling, and the next thing she remembered was her face being shoved into the pillows on her couch and a pain in her vaginal area as she was being raped. After

---

[1] Section 16-3-657 provides, "[t]he testimony of the victim need not be corroborated in prosecutions [for criminal sexual conduct]."

blacking out again, Victim testified that once she regained consciousness, the man was gone and her clothes were down around her ankles. Victim stated she tried to call Bruton, but when she did not answer, she drove to Bruton's home. Victim could not identify the attacker, but denied ever having consensual sex with Stukes.[2]

Stukes testified in his own defense. He stated he met Victim at a friend's apartment in the complex where she lived. After flirting awhile, Stukes alleged Victim invited him back to her apartment, where they ultimately ended up having sex.

During the jury charge conference, Stukes objected to the instruction on section 16-3-657, arguing it violated his right to equal protection and amounted to an impermissible comment on the facts. The trial court denied the request and included this statement in its charge: "The testimony of a victim in a criminal sexual conduct prosecution need not be corroborated by other testimony or evidence," in addition to the general charge on credibility determinations.

During the course of deliberations, the jury submitted a number of questions to the trial court, including: "the South Carolina law that the victim's testimony in CSC . . . does not need to be corroborated, . . . does that law imply that the victim's testimony must be accepted as being true?" In response, the court simply recharged the general law on credibility determinations. The jury almost immediately returned with a verdict, finding Stukes guilty of burglary and CSC. He was sentenced to twenty-five years.

On appeal, the court of appeals affirmed in an unpublished opinion. *State v. Stukes*, Op. No. 2015-UP-014 (S.C. Ct. App. filed January 14, 2015). This Court granted certiorari.

## ISSUE PRESENTED

Did the court of appeals err in affirming the trial court's charge that a victim's testimony need not be corroborated by additional evidence?

## LAW/ANALYSIS

Stukes argues the trial court erred in charging section 16-3-657 on the basis that a victim's testimony need not be corroborated with additional evidence. We

---

[2] When Victim was shown a photo lineup, she indicated that Stukes "looked familiar" but she could not say she knew him.

agree this constitutes an impermissible charge on the facts and overrule the precedent to contrary.

Jury instructions should be designed to enlighten the jury and aid it in arriving at a correct verdict. *State v. Leonard*, 292 S.C. 133, 137, 355 S.E.2d 270, 273 (1987). Regardless of whether the charge is a correct statement of the law, instructions which confuse or mislead the jury are erroneous. *Id.* When reviewing a jury charge for error, an appellate court considers the charge as a whole; the charge must be prejudicial to the appellant to warrant a new trial. *State v. Curry*, 406 S.C. 364, 373, 752 S.E.2d 263, 267 (2013).

In *State v. Rayfield*, 369 S.C. 106, 631 S.E.2d 244 (2006), this Court affirmed the trial court's charge of section 16-3-657. In so holding, the Court considered not only the entirety of the jury charge, but also the legislative intent behind enactment of the statute. *Id.* at 117–18, 631 S.E.2d at 250. The Court initially opined that section 16-3-657 "prevents trial or appellate courts from finding a lack of sufficient evidence to support a conviction simply because the alleged victim's testimony is not corroborated." *Id.* at 117, 631 S.E.2d at 250. However, the Court went further and held that in enacting section 16-3-657:

> the Legislature recognized that crimes involving criminal sexual conduct fall within a unique category of offenses against the person. In many cases, the only witnesses to a rape or sexual assault are the perpetrator and the victim. An investigation may or may not reveal physical or forensic evidence identifying a particular perpetrator. The Legislature has decided it is reasonable and appropriate in [CSC] cases to make abundantly clear—not only to the judge but also to the jury—that a defendant may be convicted solely on the basis of a victim's testimony.

*Id.* Accordingly, the Court held that while a trial court is not required to charge section 16-3-657, if it does, the charge is not reversible error provided this instruction is "not unduly emphasized and the charge as a whole comports with the law." *Id.* at 117–18, 631 S.E.2d at 250.

Then-Justice Pleicones dissented and would have found the charge reversible error. Under his view of the legislative intent, the statute is not the proper subject of a charge, but merely serves to guide trial and appellate courts in analyzing the sufficiency of evidence. *Id.* at 119, 631 S.E.2d at 251 (Pleicones, J., dissenting). Additionally, he noted this charge "has the potential for creating more

problems than solutions, for it might cause confusion when read with the general charge on witness credibility." *Id.* at 120, 631 S.E.2d at 251 (internal citations omitted). Furthermore, he noted that placing this emphasis on the *victim's* testimony appeared to be a comment on the facts by the court. *Id.* at 120, 631 S.E.2d at 252.

We are persuaded by the dissent in *Rayfield* and conclude this charge is confusing and violative of the constitutional provision prohibiting courts from commenting to the jury on the facts of a case. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."). Accordingly, it is not within the province of the court to express an opinion to the jury on its view of the facts. By addressing the veracity of a victim's testimony in its instructions, the trial court emphasizes the weight of that evidence in the eyes of the jury. The charge invites the jury to believe the victim, explaining that to confirm the authenticity of her statement, the jury need only hear her speak.[3] Moreover, it is inescapable that this charge confused the jury. Specifying this qualification applies to one witness creates the inference the same is not true for the others. This confusion is illustrated by the jury's query as to whether our law implies a victim's testimony *must* be accepted as being true. In our view the trial court's decision to merely recharge credibility, as opposed to answer the question in the negative, did nothing to inform the jury on this issue.

---

[3] Our holding is in accord with a number of other jurisdictions which have likewise determined this charge is improper. *See Gutierrez v. State*, 177 So. 3d 226, 231–32 (Fla. 2015) ("It cannot be gainsaid that any statement by the judge that suggests one witness's testimony need not be subjected to the same tests for weight or credibility as the testimony of others has the unfortunate effect of bolstering that witness's testimony by according it special status. The instruction in this case did just that, and in the process effectively placed the judge's thumb on the scale to lend an extra element of weight to the victim's testimony."); *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003) (finding charge overemphasized testimony of victim and was both confusing and misleading); *Veteto v. State*, 8 S.W.3d 805, 816 (Tex. Ct. App. 2000) *abrogated on other grounds by State v. Crook*, 248 S.W.3d 172 (Tex. Crim. App. 2008) (finding jury charge amounted to a comment on the weight of the evidence and was therefore improper). *But see Gaxiola v. State*, 119 P.3d 1225, 1232 (Nev. 2005) (upholding "no corroboration' instruction," and finding it "does not tell the jury to give a victim's testimony greater weight, it simply informs the jury that corroboration is not required by law").

Furthermore, we do not believe this case is amenable to a harmless error analysis. Our review of the record indicates this case hinged on credibility. Victim said it was rape; he said it was consensual. The jury was clearly confused as to whether it was required to accept Victim's testimony as truth. We therefore cannot say the error in this case was harmless beyond a reasonable doubt.[4]

## CONCLUSION

Based on the foregoing, we overrule our precedent to the extent it condones the use of section 16-3-657 as a jury charge.[5] Additionally, we find the error here was not harmless and reverse and remand for a new trial.


**PLEICONES, C.J., and BEATTY, J., concur. KITTREDGE, J., dissenting in a separate opinion in which Acting Justice James E. Moore, concurs.**

---

[4] While we appreciate the existence of conflicting facts as illuminated in the dissent, we would hesitate to call the evidence against Stukes overwhelming. The testimony highlighted by the dissent boils down to those witnesses' perception (i.e., credibility assessments) of Victim. Therefore, we disagree that the error in charging section 16-3-657 can be saved by analyzing the charge as a whole.

[5] This includes, but may not be limited to, *State v. Rayfield*, 369 S.C. 106, 631 S.E.2d 244 (2006); *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993); *State v. Hill*, 394 S.C. 280, 715 S.E.2d 368 (Ct. App. 2011); and *State v. Orozco*, 392 S.C. 212, 708 S.E.2d 227 (Ct. App. 2011). Therefore, our ruling is effective in this case and those which are pending on direct review or are not yet final, but not in post-conviction relief.

**JUSTICE KITTREDGE:** I respectfully dissent. I would affirm the court of appeals in result.

I agree with the majority that we should no longer approve the no-corroboration charge, but I would find any error in the trial court's decision to give the charge in this case harmless. Contrary to the majority's portrayal, the evidence presented in this case was much more than "he said, she said." Multiple witnesses testified to the assault's physical and emotional impact on the victim. Jacqueline Bruton, the victim's friend, saw the victim shortly after the victim's encounter with Stukes. Bruton testified there was a handprint on the victim's face or neck after the attack, matching the victim's version of the attack. Bruton observed that the victim appeared "afraid." Investigator Brian Metz of the Richland County Sheriff's Department (the RCSD), who spoke with the victim at the hospital, described the victim's demeanor as "withdrawn." Donna Sharpe, the ER nurse who examined the victim with a rape kit, described the victim as "nervous and tearful." Sharpe testified the victim "would withdraw from any kind of touch" and was "anxious and gripping the bed and tearful" when she underwent a pelvic examination. Sharpe's notes also described a bruise and redness on the victim's face and what appeared to be a hand mark on the victim's neck. Finally, Sergeant Brian Godfrey of the RCSD testified that the victim was "visibly upset and crying" when he spoke with her about the incident in March 2010, nearly six years after it occurred. These witnesses' testimony is consistent with the victim's, in which she described a brutal assault that included being grabbed by the throat and punched in the face.

In addition to the evidence corroborating the victim's testimony, the jury was presented with Stukes's inconsistent statements. Stukes initially denied knowing the victim, much less having had sex with her. When pressed with the evidence, including the DNA match, Stukes remembered the victim and that they had consensual sex. Therefore, abundant evidence in addition to the victim's testimony was presented to the jury.

Also conspicuously absent from the majority opinion is the trial court's full jury charge on credibility. "[J]ury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error." *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000) (citing *State v. Smith*, 315 S.C. 547, 554, 446 S.E.2d 411, 415 (1994)). "A jury charge which is substantially correct and covers the law does not require reversal." *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011) (citing *State v. Foust*, 325 S.C. 12, 16, 479 S.E.2d 50, 52 (1996)).

In this case, the trial court charged the jury, in relevant part, as follows:

> The testimony of a victim in a criminal sexual conduct prosecution need not be corroborated by other testimony or evidence. Necessarily, you must determine the credibility of witnesses who have testified in this case. Credibility simply means believability. It becomes your duty as jurors to analyze and to evaluate the evidence and determine which evidence convinces you of its truth.
>
> In determining the believability of witnesses who have testified in this case, *you may believe one witness over several witnesses or several witnesses over one witness*. You may believe a part of . . . the testimony of the witness and reject the remaining part of the testimony of that same witness. You may believe the testimony of a witness in its entirety, or you may reject the testimony of a witness in its entirety.
>
> You may consider whether any witness has exhibited to you an interest, bias, prejudice, or other motives in this case. You may also consider the appearance and manner of a witness while on the witness stand.

(emphasis added). When the jury asked for clarification, the trial court instructed the jury that "you must determine the credibility of *all* witnesses who have testified in this case. . . . [Y]ou may believe one witness over several witnesses, or several witnesses over one witness." (emphasis added).

The trial court noted that its second charge made it clear the jury was to consider the credibility of every witness who testified, which necessarily included the victim. Therefore, when viewed in their entirety, the charges properly instructed the jury that it was to subject the victim's testimony to the same scrutiny as that of other witnesses. Thus, any error in giving the no-corroboration charge was cured by the full witness-credibility instructions.

In short, given the substantial corroborating evidence and the trial court's extensive credibility instructions, any error was harmless. The result reached by the court of appeals, and therefore Stukes's convictions and sentences, should be affirmed.

**Acting Justice James E. Moore, concurs.**